Bergak, J.
Defendant has been convicted of selling L.S.D., a dangerous drug, in the fourth degree, a felony, and sentenced to an indefinite term in prison with a maximum of four years. Police seized 182 wrapped tablets of L.S.D. on March 23, 1970 in a raid on a farmhouse shown to be a place in which sellers and users of L.S.D. lived in communal fashion. Defendant was not in the house at the time of the raid.
The offense charged against him consists of purported selling of some L.S.D. tablets, similar in outward appearance to the wrapped tablets seized.
The sale charged to defendant, however, occurred February 28, almost a month before the raid was made. The sale was said to have been made to Arthur Muhl, one of the communal *101 occupants of the house. Muhl did not testify that defendant sold or gave him the tablets. He told the court he had tablets, but he did not remember who gave them to him.
There was proof in the record that L.S.D. tablets were kept at the farmhouse most of the time and that all of the communal occupants were users or sellers and all had access to the drugs and took them from time to time. Defendant was not one of this group.
One of the occupants, James Armstrong, testified that everyone in the house dealt in drugs. He testified that defendant was present in the house on February 28 and he stated the conclusion that Muhl had bought “some acid” from defendant. When the witness said he had “ presumed ” that Muhl had “bought it” the court inquired whether the witness actually saw this and he said: “ No, I didn’t see the actual transaction.”
The record is, therefore, that neither this witness nor Muhl, to whom the sale is charged to have been made, testified to any actual fact of observation which would have supported the defendant’s conviction for sale of L.S.D. in connection with the raid and seizure of drugs made by police a month later.
Support for the charge depends on the actual observation of Betty Petrie, one of the occupants of the house. She testified that she saw defendant give Muhl material wrapped in tinfoil similar in outward appearance to the wrapping on the 182 pills seized by police a month later. There were, she said, “ approximately between 10 and 20 ’ ’ given to Muhl on February 28.
Since it is not possible that the conviction of appellant for selling L.S.D. a month before the police raid could stand without the testimony of Miss Petrie, her credibility was a critical issue in the case. She testified she had been charged with selling L.S.D. as a dangerous drug in the fourth degree and that she received an unconditional discharge. The defense was entitled to know exactly what were the circumstances of that discharge as affecting the motivation and credibility of her testimony for the prosecution.
Full inquiry was restricted by intervention of the court. The witness was asked whether “As a requirement at the time of the unconditional discharge you agreed to testify ” and she said “I believe so”. The court thereupon intervened and said: *102 “ Wait a minute, Counsel, I didn’t agree to nothing. I gave the unconditional discharge hut there was no agreement.” The court continued: ‘ ‘ She is not going to contaminate this Jury as far as I am concerned. ’ ’ Appropriate motions were made for a mistrial.
This witness had testified before the Grand Jury on two occasions — one on April 16,1970, the other May 12. In her first testimony and in her original statement to the police she did not mention the defendant’s purported part in furnishing drugs. Between her first and second appearance before the Grand Jury, she “ imagined ” that she had talked to her lawyer and “ someone ” had brought to mind the defendant. Also between her first and second appearance she had pleaded in her own case on April 20, and after her second appearance before the Grand Jury she received the unconditional discharge on June 25.
On such a record defendant’s counsel was entitled to broad inquiry into the circumstances of the witness’s plea and unconditional discharge; and whether any condition had been attached to it related to her testimony. The court’s intervention not only tended to frustrate this, but it also superimposed the court’s standing and integrity against the making of inquiry. The right to make this inquiry of the witness is clear (People v. Savvides, 1 N Y 2d 554, and People v. Mangi, 10 N Y 2d 86, which followed Savvides). As to the Judge’s intervention, see People v. Mendes (3 N Y 2d 120).
The order should be reversed and a new trial ordered.
Chief Judge Fuld and Judges Burke, Scileppi, Breitel, Jasen and Gibson concur.
Order reversed, etc.