THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIAM OTERO TORRES, Appellant.

First Department, February 26, 1976

*Philip L. Weinstein* of counsel *(William E. Hellerstein* and *William J. Gallagher,* attorneys), for appellant.

*Ronny Greenwald Siegal* of counsel *(Barbara Gonzo* with

him on the brief; *Mario Merola, District Attorney),* for respondent.

STEVENS, P.J. Defendant was charged with the fatal shooting of Gabriel Sanchez on February 17, 1973, at approximately 10:00 P.M. in front of 801 East Tremont Avenue. The People produced two eyewitnesses to the crime, Santiago Oriol, who was double parked in a car driven by defendant, and Mabel Saladini, who was looking through her kitchen window on the second floor of the building.

The proof adduced by the People afforded ample basis to support the verdict and if that were the only question before us, reversal would not be indicated. However, on this appeal, defendant alleges serious error which he claims deprived him of his right to a fair trial. He asserts that the trial court improperly limited cross-examination of the two eyewitnesses; that it was error to deny his motion for a *Wade* hearing with regard to Mrs. Saladini's pretrial identification of defendant from a single photograph; and that the repeated handing over of so-called *Rosario* material by the prosecutor to defense counsel in the presence of the jury prejudiced his case.

Oriol, a key prosecution witness, testified in substance that defendant was driving a Pontiac G.T.O. and picked him up shortly before the crime occurred. They stopped in front of 801 East Tremont Avenue, and defendant, who left the motor running, approached Sanchez with gun in hand, made a few remarks and shot him. As he stepped away defendant, observing movement by Sanchez, returned and fired additional shots into his body.

Oriol testified that defendant threatened to shoot him if he did not keep quiet and that he accompanied defendant to a Newark, New Jersey restaurant, then later to defendant's apartment in the Bronx, before returning to New Jersey, where they remained for several weeks. Oriol worked briefly as an electrician. Following an argument with and beating by defendant, Oriol went to the Newark police who then took both men into custody. New York City Detective Lugo testified that on March 8, 1973, he obtained a statement from Oriol in the Newark police station where, according to Lugo, Oriol was detained as a material witness in connection with defendant's assault upon him.

A felony complaint, sworn to March 9, 1973 by Detective Marsh and filed in New York City Criminal Court, charged

defendant and Oriol, while acting in concert, with the murder of Sanchez and possession of a weapon. Defendant and Oriol were returned to New York on March 14, 1973.

At trial, Oriol testified that he was brought back to New York as a material witness. On cross-examination, the court refused to allow defense counsel to ask Oriol if he had been charged with the murder of Sanchez. The defense then made an offer of proof that Oriol was brought back on the Criminal Court complaint; that a "DD-5" report indicated a possible indictment of Oriol on the charge of murder; that Oriol, after the homicide, had been indicted for the crime of arson; and, that Oriol's subsequent plea to hindering prosecution also covered the arson indictment. The court was shown the Criminal Court complaint and the "DD-5" report but rejected the offer of proof and also refused to permit defense counsel to ask Oriol if he had recently had a fight with Sanchez and was looking for him on the night of the murder. This was clearly error since the offer of proof was designed to show bias or prejudice on the part of the witness and thus to affect his credibility.

While the general rule is that a witness may not be asked if he has been indicted or arrested for a crime, since an indictment is merely an accusation, there are recognized exceptions to the rule. "The witness' bias in favor of the party calling him, or his hostility to the party against whom he testifies, may be shown to affect his credibility" (Richardson, Evidence [Prince, 10th ed.], § 503). In light of the lenient plea afforded Oriol, a plea "to hindering prosecution", which covered that indictment as well as the indictment for arson, reasonable latitude should have been afforded defense counsel in making inquiry into the circumstances affecting or leading to the plea. Such inquiry is relevant to show the witness' interest in testifying favorably for the People. This was not done. Since the felony complaint charged Oriol with murder, the later comparatively minor charge and plea, coupled with his becoming a witness for the People, warranted giving the defense an opportunity for reasonable exploration *(People v Roth,* 30 NY2d 99; *Alford v United States,* 282 US 687, 693). Bias in favor of the prosecution or hostility toward the defendant may be shown by any competent evidence and could have been shown by cross-examination of the witness. Moreover, the crime occurred on February 17, 1973, and Oriol did not go to the police until March 8, 1973. It appears from the record,

despite Oriol's professed fear of the defendant, that there were previous opportunities for him to seek police protection had he so desired.

Defense counsel should have been allowed to explore the question of whether Oriol earlier had a fight with Sanchez and was looking for him on the night of the crime, since there then could have been a motive for Oriol to participate in the crime and his role then would not have been merely that of an innocent bystander. Had he been permitted to do so and if it were shown that Oriol was an accomplice, then the court's failure to charge, as requested by the defense, with respect to the law on accomplice testimony would have been serious error *(People v Capuano,* 15 AD2d 400; *People v Smith,* 26 AD2d 588).

Where one seeks to interrogate for the purpose of impeachment, the discretion of the trial court permits it to limit the quantity of such evidence but does not encompass a refusal to admit such evidence *(People v Brooks,* 131 NY 321; *Garnsey v Rhodes,* 138 NY 461).

On direct examination, Mrs. Saladini, the other eyewitness, testified that prior to February 17, 1973, she had known defendant for a period of nine months to a year when he was working at a fruit store in her building and had seen him driving in the area at 3 P.M. on the day of the crime. On cross-examination, Mrs. Saladini testified she had last seen defendant in that store in 1970. Defense counsel's attempts to ascertain how well she knew defendant and how often and under what circumstances she had seen him were blocked. Since this witness had been shown a single photograph of defendant, a suggestive procedure in any event, such line of inquiry was relevant and could properly have been the subject of a *Wade* hearing, notwithstanding her prior contact with defendant. Moreover, this severe limitation of defense counsel's cross-examination of Mrs. Saladini was in marked contrast to the latitude given the prosecution on direct examination with respect to the witness' observation of Oriol, also known as Caco, as he sat in the car.

Examination of the record persuades us that the defendant was unduly limited in the scope of his cross-examination of several of the People's witnesses, especially the two key eyewitnesses, while the prosecutor had an unusually wide scope of examination, including the continued use of leading questions over objections, some of which were sustained, but

the rulings as to which were ignored by the prosecutor. It is the court, not the prosecutor, who is in charge of the proceedings.

Finally, the turning over of the prior statements of witnesses to a defendant, pursuant to *People v Rosario* (9 NY2d 286) should not be done in such a manner or under such circumstances as to imply that such material is consistent with the testimony of the witness, thereby bolstering such testimony.

Accordingly, the judgment rendered June 7, 1974, in the Supreme Court, Bronx County (WARNER, J.), convicting defendant upon a jury verdict of murder and possession of a weapon as a felony and sentencing him to concurrent indeterminate terms of 20 years to life and seven years respectively, reversed on the law and in the interests of justice and a new trial ordered.

KUPFERMAN, BIRNS, LANE, and YESAWICH, JJ., concur.

Judgment, Supreme Court, Bronx County, rendered on June 7, 1974, unanimously reversed, on the law and in the interests of justice, and a new trial directed.