■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JULIO KARAMANITES, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Kings County (Bernstein, J.), rendered August 19, 1981, convicting him of robbery in the first degree, upon a jury verdict, and imposing sentence.

Judgment reversed, on the law and as a matter of discretion in the interest of justice, and new trial ordered.

On the record before us, we are compelled to conclude that defense counsel's performance was so woefully inadequate that defendant was deprived of the "meaningful representation" of counsel to which he is constitutionally entitled (*People v Baldi,* 54 NY2d 137, 147; see *People v Zaborski,* 59 NY2d 863, 865). Defense counsel failed to guard against normally inadmissible evidence; brought out highly prejudicial and otherwise suppressible evidence on cross-examination of the People's witnesses; failed to conduct any pretrial discovery; and failed to fashion any plausible theory of defense (see *People v Moore,* 102 AD2d 898). Accordingly, we reverse the judgment and order a new trial.

The charges against the defendant stem from a knifepoint robbery. Defendant, who had never before been convicted of a crime, was represented by retained counsel[*] and assisted by an interpreter.

The victim's identification was far from certain and it was only after extensive deliberation that the jury convicted defendant of robbery in the first degree. Counsel's performance may have tipped the balance.

Extremely prejudicial was defense counsel's revelation to the jury that his client had been arrested for armed robbery 10 days prior to the crime for which he was being tried. It is obvious that

---

[*] Of course, defendants who retain their own lawyers are not entitled to less protection against ineffective assistance of counsel than defendants for whom an attorney is appointed (*Cuyler v Sullivan,* 446 US 335, 344; *People v Aiken,* 45 NY2d 394, 400-401).

the People could not have brought out this damning evidence on its own initiative (see, e.g., *People v Vails,* 43 NY2d 364, 368; *People v Blanchard,* 83 AD2d 905, app dsmd 56 NY2d 648). Inasmuch as defendant did not take the stand and had never before been convicted of a crime, there is simply no tactical justification which can be discerned for this "inexplicably prejudicial course" (*People v Zaborski, supra,* p 865). It is stark evidence of ineffectiveness (*People v Jones,* 30 AD2d 1038, affd 25 NY2d 637).

Counsel also repeatedly elicited testimony from two police officers which would have constituted clear violations of the rule of *People v Trowbridge* (305 NY 471) and *People v Napoletano* (58 AD2d 83) and failed to object to such bolstering testimony elicited by the People. He also effectively eliminated one of the greatest weaknesses in the People's case — the complainant's poor memory at trial of what the robbers looked like at the time of the defendant's arrest and whether the defendant matched the description given by him — by eliciting from the complainant, on cross-examination, that, at the time of the defendant's arrest, he clearly recalled what his assailants were wearing and that he saw the defendant's face before identifying him and from one of the police officers, on cross-examination, that, although the officer could not recall the description the victim had given, the officer was certain that the defendant fit the description of one of the men.

These blunders could only have been brought about by a lack of preparation, as there certainly is no tactical reason behind them. Such conduct has repeatedly been deemed evidence of ineffective assistance of counsel (e.g., *People v Pritchett,* 48 NY2d 933; *People v Brown,* 45 NY2d 852, 853; *People v Vezza,* 89 AD2d 882; *People v Sarmiento,* 40 AD2d 562).

Furthermore, defense counsel failed to request or obtain the victim's pretrial statements, a police officer's memo book, and reports and statements given to the District Attorney — all clearly discoverable (CPL 240.45, 240.20; see, e.g., *People v Consolazio,* 40 NY2d 446, cert den 433 US 914; *People v Malinsky,* 15 NY2d 86, 90-91; *People v Rosario,* 9 NY2d 286, cert den 368 US 866). When counsel did request the material from a witness in the presence of the jury, he simply examined it and asked no questions, thus conveying the impression that the written material supported the People's case against his client (cf. *People v Torres,* 51 AD2d 225, 229).

Finally, in summation, defense counsel advanced two theories: (1) that the victim had misidentified defendant, who is Hispanic, because he had originally described his assailants as

"two black men" and (2) that the victim had invented the robbery and falsely accused the defendant because he had had a marital dispute. But there was simply no evidence to support either of these two theories. Moreover, even if there were evidence that the victim had had a fight with his wife, it is hard to conceive how this would cause the victim to deliberately fabricate a robbery.

In addition, counsel essentially marshaled the evidence in the People's favor and commented that the police officers had risked their lives "to apprehend this [defendant] who was arrested ten days ago for robbery". No mention was made of the fact that initial identification of the defendant was made from behind, that, contrary to the victim's testimony that it was still light outside at the time of the robbery, the sun had set hours before, and that the coat defendant was wearing at the time of his arrest, allegedly the same coat that the assailant had worn, was never introduced in evidence. Only the briefest mention was made of the fact that the witnesses had poor memories. In short, the summation was, in effect, "an argument for the conviction of the defendant" (*People v Duke,* 58 AD2d 31, 33; see *People v LaBree,* 34 NY2d 257).

As a result of counsel's actions, defendant did not receive a fair trial. On this record, "we cannot say that the representation defendant received in this case was adequate or effective in any meaningful sense of the words" (*People v Droz,* 39 NY2d 457, 463; see, also, *People v Zaborski,* 59 NY2d 863, *supra; People v Moore,* 102 AD2d 898, *supra; People v Butler,* 94 AD2d 726). Counsel's representation fell below the objective standard of reasonableness and defendant was prejudiced thereby (see *Strickland v Washington,* 466 US __, 104 S Ct 2052; *People v Montgomery,* 101 AD2d 893; *People v Morris,* 100 AD2d 630; *People v Lundy,* 104 AD2d 384; *People v Wagner,* 104 AD2d 457).

We are also troubled by the supplemental charge in which the court urged the jurors to reconcile their views in order to avoid the necessity for a new trial, but failed to mention that the verdict must also reflect the individual judgment of each juror and not a mere acquiescence in the majority will (see *People v Jackson,* 76 AD2d 869; *People v Ali,* 65 AD2d 513, affd 47 NY2d 920; *People v Demery,* 60 AD2d 606; *People v Henry,* 56 AD2d 610). In addition, at the same time, the court also erroneously stated, concerning the definition of reasonable doubt, that "if your doubt does not have common sense or logic to support it, then your doubt would not be reasonable". The implication, when read in context, is that any doubt as to defendant's guilt would not be reasonable (see *People v Holiday,* 70 AD2d 645; *People v Ostin,* 62 AD2d 1004).

Although no objection was taken — again, a serious dereliction on counsel's part — the evidence against the defendant was based on a single witness whose credibility was not without doubt, and, therefore, reversal is also warranted on this basis in the interest of justice. Titone, J. P., O'Connor, Weinstein and Rubin, JJ., concur.