■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DALLAS EDMOND, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Kings County (Lombardo, J.), rendered May 24, 1984, convicting him of murder in the second degree and criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence.

Judgment reversed, as a matter of discretion in the interest of justice, and a new trial ordered.

The defendant's conviction of the crimes of murder in the second degree and criminal possession of a weapon in the second degree arose out of the fatal shooting of Ivory Rogers on July 3, 1979.

After a *Sandoval* hearing, Criminal Term ruled that the defendant could be cross-examined solely with regard to (1) whether he had been convicted of a felony in New York in 1965 and robberies in New York in 1973 and 1976 and (2) the length of the sentences imposed on those convictions. At the time of the *Sandoval* hearing, the court was advised that the defendant also had another 1976 conviction, in the State of Georgia, for receiving stolen property. Since no additional information was then available to the court and counsel

regarding this conviction, Criminal Term held its *Sandoval* ruling as to this out-of-State conviction in abeyance.

During the direct examination of the defendant, defense counsel asked his client about his three prior convictions in New York State, and the sentences imposed thereon, and, despite the fact that the court never ruled on whether the Georgia conviction could be used, queried the defendant about that conviction as well. However, at all times, defense counsel's questions in this area were brief and well within the parameters set by the court in its *Sandoval* ruling.

During cross-examination of the defendant, however, the prosecutor (1) inquired in some detail into the nature of the Georgia conviction, (2) inquired into the underlying facts of a 1959 misdemeanor conviction which the court had excluded in its *Sandoval* ruling, (3) questioned the defendant at some length with regard to the latter's knowledge of the various degrees of the crime of robbery, and (4) referred to the defendant's use of aliases.

The prosecutor's cross-examination of the defendant in this area went beyond the parameters of Criminal Term's *Sandoval* ruling, and was improperly designed to demonstrate that the defendant had a propensity to commit crimes *(see, People v Schwartzman,* 24 NY2d 241, *cert denied* 396 US 846).

Finally, the court erred in its decision "to charge flight" to the jury. Apart from the fact that the defendant denied leaving Brooklyn during the summer of 1979, the main prosecution witness, who allegedly was an eyewitness to the crime, testified that he saw the defendant "a couple times" shortly after the incident, in the immediate neighborhood of the crime scene. Although a police officer testified for the prosecution that the defendant eventually went to Georgia—the defendant later testified that he went to Georgia in 1980 to visit his brother—the police officer acknowledged during his testimony that the defendant's sojourn in Georgia first commenced in or about November 1980, over a year after the crime was committed. On this record there was an insufficient basis to charge flight to the jury, and the court erred in so charging *(see, People v Allen,* 61 AD2d 619, *affd* 48 NY2d 760; *People v Cathey,* 38 AD2d 976).

Although no objection was taken to these errors, the evidence against the defendant was based "on a single witness whose credibility was not without doubt" *(People v Karamanites,* 104 AD2d 899, 902), in view of the defendant's trial testimony that the witness had a violent argument with the

defendant over cocaine prior to the date of the instant crime, and had, according to the defendant, allegedly threatened "to get [defendant] one way or the other". Under these circumstances, reversal is warranted in the interest of justice (see, People v Karamanites, supra). Mangano, J. P., Gibbons, Niehoff and Kunzeman, JJ., concur.