■ The People of the State of New York, Respondent, v Joel McCray, Appellant. [32 NYS3d 316]—

Appeal by the defendant from a judgment of the Supreme Court, Queens County (Holder, J.), rendered August 8, 2013, convicting him of robbery in the second degree (two counts), criminal possession of stolen property in the fourth degree, and criminal possession of stolen property in the fifth degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is reversed, on the law, and a new trial is ordered.

The defendant was charged, inter alia, with acting in concert with another individual to forcibly steal property from the complainant. The People alleged that the defendant and an accomplice followed the complainant to her doorstep from a subway station and thereafter forcibly took her purse from her. After a jury trial, the defendant was convicted of two counts of robbery in the second degree, among other offenses.

At trial, the People presented the testimony of, among other witnesses, the complainant, who identified the defendant as one of the two people who stole her purse. On direct examination, the complainant testified that the defendant and another person were following her as she exited the subway station on her way home from work. She testified that when she arrived at the entryway to her apartment, she remained outside to smoke a cigarette, and the defendant, with the other person behind him, approached her. She testified that in response to her inquiry as to what they were doing, the defendant stated that they were looking for a friend's house but were lost. She testified that she provided names of surrounding streets, and the defendant turned and walked past her. She further testi-

fied that she turned to go into her apartment and then felt a hand grab the right side of her face and pull her backwards to the ground, and that the person who had been with the defendant pulled her purse from her, causing the strap to break, while she was on the ground. According to the complainant, the defendant and the other person then ran off together, and she ran after them until she lost them around the corner.

Another witness, an off-duty police officer who had been walking his dog in the area at that time, testified that he called the police after seeing the defendant and the other person running from the complainant. A police officer who was on duty at the time testified that he and his supervisor had received a radio call reporting a robbery in progress and subsequently picked up the off-duty police officer near the crime scene. The police officer further testified that he and his supervisor ultimately detained the defendant, as well as the other person, on a subway platform. The police officer testified that upon searching the defendant and the other person, they found items that had been in the complainant's purse in the possession of the other person. The defendant did not possess any of the items taken from the complainant. A police sergeant testified that she recovered the complainant's wallet in a park next to the subway station.

On direct examination, the complainant, other than testifying that the defendant, with another person, followed her from the subway station to her apartment door before he approached her about being lost, did not testify to any affirmative act taken by the defendant in furtherance of the crimes charged. However, during cross-examination, defense counsel elicited testimony from the complainant that the defendant was the person who grabbed her face and pulled her to the ground during the robbery. Specifically, defense counsel asked the complainant to confirm that she did not know which individual grabbed her from behind, and the complainant responded that she was sure that it was the defendant who put his hand on her face. No such testimony had been elicited on direct examination.

After this exchange, defense counsel indicated that he wanted to impeach the complainant with her grand jury testimony, asserting that the complainant had testified before the grand jury that she did not know who grabbed her face and pulled her down. During a subsequent sidebar conference outside the hearing of the jury, counsel and the trial court reviewed a transcript of the relevant grand jury testimony and determined that no such testimony had been given by the

complainant. Thereafter, defense counsel did not question the complainant about her grand jury testimony.

During a charge conference, the trial court denied a request by defense counsel for a charge to the jury that "just being present at the scene is not enough, you must do something to aid another or be a participant." The court stated that such a charge was not consistent with the facts elicited at trial in that the complainant "clearly said [the defendant] was the one who grabbed her around the face from the back and pulled her to the ground and commenced the robbery."

" 'A defendant in a criminal case has a constitutional right to the effective assistance of counsel' " (*People v Miller*, 87 AD3d 1075, 1075 [2011], quoting *People v Larkins*, 10 AD3d 694, 694 [2004]; *see* US Const Sixth Amend; NY Const, art I, § 6). " 'However, what constitutes effective assistance is not and cannot be fixed with precision, but varies according to the particular circumstances of each case' " (*People v Miller*, 87 AD3d at 1075, quoting *People v Rivera*, 71 NY2d 705, 708 [1988]). To establish whether a defendant was deprived of the effective assistance of counsel under the New York State Constitution, a court must determine whether " 'the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation' " (*People v Miller*, 87 AD3d at 1075, quoting *People v Baldi*, 54 NY2d 137, 147 [1981]; *see People v Benevento*, 91 NY2d 708, 712 [1998]). The New York standard focuses on "the fairness of the process as a whole" (*People v Benevento*, 91 NY2d at 714). "[T]he right to effective representation includes the right to assistance by an attorney who has taken the time to review and prepare both the law and the facts relevant to the defense" (*People v Droz*, 39 NY2d 457, 462 [1976]; *see People v Oliveras*, 21 NY3d 339, 346-347 [2013]). To prevail on a claim of ineffective assistance of counsel, the defendant must demonstrate "the absence of strategic or other legitimate explanations" for counsel's allegedly ineffective representation (*People v Rivera*, 71 NY2d at 709; *see People v Miller*, 87 AD3d at 1076).

Under the circumstances of this case, the defendant was deprived of the effective assistance of counsel. The crux of the defense was that there was no evidence to show that the defendant participated in the criminal acts at issue. However, defense counsel elicited testimony from the complainant, not provided on direct examination, that the defendant was the person who grabbed her face and pulled her to the ground during the robbery. The inclusion of this testimony into the jury's

calculus tied the defendant to the robbery in a way that the complainant's direct testimony had not—it was evidence that the defendant actively participated in the robbery. The elicitation of this testimony by defense counsel eliminated the biggest weakness in the People's case, that is, establishing that the defendant "acted with the mental culpability required for commission of the crime" (*People v Compitiello*, 118 AD2d 720, 720 [1986]) by intentionally aiding the person who engaged in the robbery (*see* Penal Law § 20.00), rather than being someone who, although present, was a nonparticipant (*see e.g. People v Karamanites*, 104 AD2d 899, 900 [1984]). The testimony wholly undermined the defense that the defendant was not a participant in the crime and that no evidence tied the defendant to the acts of the person with whom he had been walking.

Defense counsel's assertion during the sidebar conference that the complainant had testified before the grand jury that she was not sure who had grabbed her face and pulled her to the ground did not reveal a legitimate trial strategy for eliciting that damaging testimony but, rather, demonstrated that defense counsel was ill-prepared for trial, as the review of the grand jury transcript immediately thereafter by counsel and the trial court revealed no such testimony. Under these circumstances, there was no legitimate trial strategy for counsel's actions (*see People v Miller*, 87 AD3d at 1077).

While defense counsel's elicitation of damaging testimony and inadequate review of the complainant's grand jury testimony are sufficient to show the ineffectiveness of the defendant's counsel (*see e.g. People v Oliveras*, 21 NY3d at 341), there is other evidence of the ineffectiveness of the representation received by the defendant. Defense counsel failed to object to multiple improper summation statements made by the prosecutor. For example, among other improper comments, the prosecutor told the jury that the defendant was "cocky" and "brazen," and that he "did not deserve" the benefit of the doubt given to him by the complainant on the night at issue; that the deliberations "should not take [the jury] very long"; that defense counsel "harped" on certain facts; that the jury could believe the complainant and not the defendant "who sits [during trial] with his buttoned up shirt hunched over"; and that the jury could rely on the complainant's testimony "[b]ecause no amount of lawyering or manipulating of her words and the details of that event were going to change the way she told it to [the jury]." The prosecutor also reiterated, without objection, certain improper testimony of the complainant that the trial court had erroneously, over defense counsel's objection, permit-

ted the jury to hear regarding "how what [the defendant] did changed [the complainant's] life." The prosecutor reminded the jury that the complainant "can't even put her trash out alone anymore," and because of what the defendant did, the complainant "had to move." These patently improper comments by the prosecutor vouched for the credibility of the complainant and the strength of the People's case, appealed to the jury's sympathy, disparaged the defendant, and denigrated the defense (*see e.g. People v Miller*, 87 AD3d at 1077; *People v Simmons*, 110 AD2d 666 [1985]; *see also People v Mohammed*, 81 AD3d 983, 984 [2011]; *People v Liverpool*, 35 AD3d 506, 506 [2006]). As no objection was made to such statements, the jury was able to consider these improper comments of the prosecutor (*see People v Simmons*, 110 AD2d 666 [1985]).

Thus, defense counsel's elicitation of damaging testimony that tied the defendant to the crime, his ill-preparedness for trial as demonstrated by his inadequate review of the grand jury testimony, and his failure to object to patently improper summation comments demonstrate the constitutional deficiency of the representation (*see e.g. id.*), constitute ineffective assistance of counsel (*see People v Winston*, 134 AD2d 546, 547 [1987]; *People v Karamanites*, 104 AD2d at 900), and deprived the defendant of meaningful representation during the trial (*see People v Miller*, 87 AD3d at 1077; *People v Lindo*, 167 AD2d 558, 559 [1990]). Accordingly, the judgment must be reversed and a new trial ordered.

In light of our determination, we need not reach the defendant's remaining contentions. Leventhal, J.P., Miller, Maltese and Duffy, JJ., concur.