*705 OPINION OF THE COURT
Sheldon S. Levy, J.
Despite more than five years of People v Sandoval (34 NY2d 371) and its progeny, no reported decision has yet set forth a fair compromise that can actually minimize prejudice to the defendant while simultaneously protecting the interests of the People. I now propose to attempt to rectify that situation.
The defendant wishes to testify in his own behalf. He apparently will not be his only witness, but he will certainly be a key witness and a necessary one in his defense. He moves to bar the prosecutor from cross-examining his with respect to a variety of prior convictions — some for the same type of crime for which he now stands accused.
The judicial dilemma of competing justifiable interests is plainly presented. Although I did not originate the approach, the ultimate solution is what I call the "Sandoval compromise”. It has been used effectively by myself and by a number of other Judges in New York County in appropriate cases, but is, apparently, little known elsewhere.
The single count in the instant indictment is for robbery in the second degree. The defendant is accused of "mugging” the complainant on August 22, 1978, at about 6:00 p.m., near the Empire State Building, with the aid of another person actually present but unapprehended. The allegation is that the defendant and his companion relieved the complainant of his wallet and a watch and fled. However, the defendant claimedly was recognized by the complainant the next day, also near the Empire State Building, while watching a three-card monte operation, and was arrested.
The defense, which has been fully revealed to the prosecuting attorney, is misidentification, alibi and, in effect, perjury on the part of the complainant. One defense witness will testify to the defendant’s presence elsewhere on the date and at the time in question. Another witness — a look-alike to defendant — will offer proof that he runs a three-card monte game and that he "beat” this very complainant out of $50 and his watch on the very evening and at the precise time of the alleged robbery.
The defendant also desires to testify, but he is naturally fearful that his previous unlawful activities will demonstrate a criminal propensity and will seriously prejudice the jury against him. In fact, the defendant’s prior criminal record is *706 fairly abundant and somewhat varied. It consists of: a 1968 arrest and dismissal of a charge of possession of a dangerous drug as a D felony; two 1971 convictions for attempted robbery in the first degree and attempted robbery in the third degree, respectively; a 1976 conviction for attempted assault as a B misdemeanor; and two A misdemeanor convictions for promoting gambling in the second degree, involving participation in three-card monte games.
The real problem is that when a defendant takes the stand, he is normally to be treated in the same fashion as any other witness (see People v Sorge, 301 NY 198, 200; CPL 60.40, subd 1). His credibility may be similarly attacked, especially with prior instances of criminal, vicious or immoral conduct (People v Duffy, 36 NY2d 258, 262; People v Molineux, 168 NY 264). The People basically are entitled to a good faith examination of the defendant as to prior convictions and previous bad acts which bear on his credibility, veracity and honesty (People v Mayrant, 43 NY2d 236, 239). If the People cannot do so; if they cannot test the defendant’s credibility; and if a defendant with a past record of serious antisocial or criminal conduct can take the stand as a "Mr. Clean”, the interests of the People will be seriously prejudiced.
On the other hand, jurors, unfortunately, have well-known tendencies to accept unthinkingly the old adage "sinner before; sinner again.” A defendant who has previously been convicted of any crime may rightly have his credibility questioned, but the interrogation should not be on the basis of a propensity to commit the crime charged (People v Schwartz-man, 24 NY2d 241, 247), and there should not be even a possibility of a conviction on that untenable ground. A defendant who has a prior record of one or more crimes, similar in nature to the charges for which he is being tried, faces almost insurmountable prejudice because of the proposition that "if he did it before, he probably did it again” and should be punished anyhow (see People v Davis,. 44 NY2d 269, 274). This, of course, is a natural and human inclination which can hardly be dissipated even by the most earnest of judicial instructions and admonitions as to the limited role such evidence should play (People v Dickman, 42 NY2d 294, 297; People v Sandoval, 34 NY2d 371, 377, supra).
Prejudice to a defendant in such a situation is even more acute where he is the only witness who can convey to the jury his version of events (People v Mayrant, 43 NY2d 236, 240, *707 supra; People v Dickman, supra, p 298); where a jury might feel, under the particular circumstances, that he ought to testify (People v Davis, 44 NY2d 269, 276, supra; People v Caviness, 38 NY2d 227, 233); or where other defense witnesses have testified and defendant’s failure to do so would appear particularly strange, despite cautionary instructions by the court (see People v Watson, 53 AD2d 576; People v Santiago, 47 AD2d 476; also cf. People v Caviness, 38 NY2d 227, supra).
Turning the coin over once more, however, where a defendant has a predisposition to commit a certain type of crime, should that defendant be given an unanticipated and unwarranted advantage — based upon his own derelictions — merely because his criminal tendencies usually exert themselves in a single direction? At least one appellate court clearly responded in the negative and was recently affirmed (People v Rahman, 62 AD2d 968, affd 46 NY2d 882; see, also, People v Shields, 58 AD2d 94, affd 46 NY2d 764; People v Watson, 57 AD2d 143, rev on other grounds and Sandoval issue not reached 45 NY2d 867). Other appellate cases, however, even in our Court of Appeals, have been decided differently on similar facts (see People v Carmack, 52 AD2d 264, affd 44 NY2d 706; People v Dickman, 42 NY2d 294, supra; People v Caviness, 38 NY2d 227, supra; People v Johnson, 64 AD2d 907; People v Smith, 60 AD2d 963).
Nevertheless, in none of these cases — on either side of the fence — did the trial court use the Sandoval compromise as a matter of fairness, practicality and discretion. Accordingly, there is no record of an appellate court which has had the opportunity to consider and pass upon the clear advantages of this now suggested approach. Instead, the appellate tribunals have been faced with only a "Hobson’s choice” of lesser evils and, in my view, this cannot make for really objective, equitable or reasonable legal pronouncements.
What then is the Sandoval compromise and how can it help to promote justice and to mitigate prejudice?
Simply put, the pure Sandoval compromise is permitting the prosecutor to ask the testifying defendant one question (or, perhaps, two where both pertinent previous felonies and misdemeanors are involved) with respect to all prior convictions and connected underlying and immoral acts. The question or questions can be phrased: "Have you ever been convicted of a prior felony?” "Have you previously been convicted of two (or three, as appropriate) felonies?” "Have you (also) been con *708 victed of a prior misdemeanor?” The precise language of the brief interrogation is, of course, dependent upon the type and number of prior convictions in each individual case. The compromise can also be allowed, as a matter of discretion, in conjunction with other nonprejudicial credibility inquiry, as the previous conduct of the defendant warrants. It can also be used with respect to some prior convictions, while permitting or barring cross-examination as to others.
Concerning the pure Sandoval compromise, and presuming that the defendant gives the expected affirmative answers and does not voluntarily advance misleading or unwarranted claims or denials (see People v Wise, 46 NY2d 321, 327; People v Rahming, 26 NY2d 411, 418; People v Miles, 23 NY2d 527, 543), this would be all of the cross-examination on that subject the prosecutor would be allowed. There would be no further credibility attacks along these particular lines as to other underlying facts, acts or incidents. Moreover, to authorize the People to ask, as the prosecutor suggests, even one additional question, which in this case would pinpoint the prior felony convictions as attempts at larceny rather than robbery, would, to my mind, vitiate the vitality, the intent and the basic fairness of the Sandoval compromise. The stated compromise question (or two) and the defendant’s affirmative response, however, serve a variety of useful purposes.
From the prosecutor’s point of view, a defendant with a prior criminal history would not be testifying as if he had an unblemished record. The jury would not be misled on the subject; the defendant’s credibility would be brought into sufficient question; and the trial court would thereafter be able to instruct the jury as to the meaning of the terms "felony” or "misdemeanor” or both and as to the manner of evaluating a witness, such as defendant, with a previous criminal record.
From the defendant’s stance, he would not be subjected to the possibility of his criminal record alone disposing of his present fate with the jury; specific prejudicial references to prior similar crimes would be eliminated; and the chilling spectre of a prosecutor’s concentration on that kind of cross-examination would not deter him from taking the stand in his own behalf (see People v Batchelor, 57 AD2d 1059, 1060-1061), especially where particular claims presented would necessitate detailed personal explanation and a jury would normally *709 expect a defendant to testify (People v Mayrant, 43 NY2d 236, 240, supra; People v Dickman, 42 NY2d 294, 298, supra).
As to the concern that the compromise question might lead a jury to speculate, to the defendant’s detriment, as to the type of prior crime or crimes involved, the answer is four-fold. Firstly, a court should not hesitate to set forth sensible and proper legal rules and principles merely because one or more jurors, on some future occasion, may violate their oaths and engage in unwarranted individual or joint conjecture. Moreover, the Trial Judge can, and usually does, charge a jury not to engage in supposition or surmise of any type. In addition, it is highly unlikely that jury speculation in this regard would become a topic of open deliberation or would even be voiced in the jury room. Finally, I can think of few defendants, if any, who would prefer a detailed cross-examination concerning their previous criminal conduct to the possibility of speculation by one or a few jurors.
All of this discussion, of course, is not to say that the Sandoval compromise should be adopted in all cases, even as a matter of discretion. It is clear that a defendant, in the first instance, has the burden of fair demonstration that examination as to particular convictions in his prior criminal record would be so prejudicial as to outweigh the probative value of such evidence on the issue of credibility. Where a defendant has plainly sustained his burden of showing substantial prejudice, questioning with respect to both the prior conviction and the underlying facts of a crime should immediately be foreclosed by a grant of the Sandoval application. Contrariwise, where a defendant has failed properly to reveal any serious prejudice at all, his motion as to such a conviction should be denied forthwith.
Therefore, it can readily be said that in every case the defendant has either sustained his burden of proof or he has not. The truth is, however, that, when dealing with degrees of prejudice, this proposition is more easily stated by the trial court than fairly acted upon. Many are the closely honed, thin-lined positions between potential prejudice to a defendant and the People’s right to test the reliability of any witness. Numerous are the cases where a decision fully in favor of one party cannot help but engender prejudice and unfairness to the losing side. The Sandoval compromise is an attempt to strike a middle course; to protect rights and interests; to minimize prejudice; and to maximize just treatment to both *710 the defendant and the People by the exercise of sound judicial discretion.
In this regard "the exclusion of prior convictions is largely, if not completely, a matter of discretion which rests with the trial courts and fact-reviewing intermediate appellate courts” (People v Shields, 46 NY2d 764, 765, supra). In fact, this discretion is not subject to review at all unless it plainly appears that there has been abuse (People v Caviness, 38 NY2d 227, 232, supra; People v Duffy, 36 NY2d 258, 262-263, supra). Accordingly, a discreet use of the Sandoval compromise should have no problem passing appellate muster.
The instant case, in my view, presents a classic situation where the Sandoval compromise can be employed to the greatest advantage. Despite defendant’s proposed identification and alibi witnesses, it will undoubtedly appear peculiar to the jury if the defendant himself does not also testify. This is especially so in light of the unusual fact pattern envisioned by the defense. Moreover, where it is anticipated that the complainant definitively will identify the defendant from an alleged, broad-daylight confrontation, the jury will undoubtedly expect the defendant to detail personally his alibi and to deny personally the complainant’s identification of him — this, of course, despite any judicial instructions to the contrary.
It will therefore be of maximum importance to the defendant to take the stand with minimum prejudice based upon his past criminal record. The defendant’s 1968 drug possession arrest is valueless from an impeachment of veracity standpoint. Not only was the case dismissed, but it is over 10 years old and concerned controlled substances — a subject with minimal credibility impact at best. In addition, the 1976 misdemeanor conviction for attempted assault involved a barroom brawl for which the defendant was fined $250 — a product of impetuous action — which fails to demonstrate exaggerated self-interest or to display any real probative effect in the truth-finding process. Furthermore, the defendant’s two misdemeanor convictions for involvement in three-card monte and the small fines paid thereon indicate a straight gambling operation and an absolute minimum of probative potential. The revelation of these particular convictions, especially under the circumstances of defendant’s arrest in this case, would not constitute fair, good-faith credibility testing. Accordingly, interrogation with respect to any of these previous criminal involvements of defendant is barred.
*711 However, the two prior felony convictions for attempted robbery are plainly distinguishable. Even if one resulted in a sentence of five years’ probation and the other in a conditional discharge, both clearly demonstrate a positioning by defendant of self-interest above the principles of society. Both surely affect his credibility in that as crimes of calculated violence they suggest that the testifying defendant stands ready again, even under oath, to make his own interests paramount.
Nevertheless, to a jury’s ears, nothing could be more prejudicial than hearing of prior convictions for the same type of crime as the one charged. Nothing could more readily be employed — even if unintentionally — to show a propensity to commit a crime rather than merely to attack credibility. Nothing could be more devastating and unfair to this defendant’s proposed defense than a disclosure of the exact nature of these prior convictions.
Accordingly, the Sandoval compromise is called to the fore to resolve this difficult problem of contrasting positions in a just, practical and moderate manner. Neither side is completely victorious by virtue of the decision made, but neither is a loser either. The defendant will be able to testify, but he will not appear "clean”. The Assistant District Attorney will be able to ask, inter alia, the single question: "Have you previously been convicted of two felonies?”, but he will not be able to show criminal propensity. The court will ultimately be able to charge the jury as to how a defendant’s prior criminal record can affect his reliability. The jury then will be able to reach a determination as to the defendant’s guilt or nonguilt based solely and properly on the facts of the case as they find them to be. If there is a conviction, it will not be premised improperly on the jury’s view of the defendant’s inclination to commit a particular crime. Justice will have been served!
In the ultimate then, the job of the court is to strike an equitable balance between competing interests; to act fairly and impartially; and to do justice to all parties. A judicious and circumspect employment of the Sandoval compromise will, in my opinion, materially aid in accomplishing these aims.
For the reasons stated, the defendant’s Sandoval application is granted to the extent only as indicated herein.