■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GEORGE ASTACIO, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Queens County (Zelman, J.), rendered October 21, 1982, convicting him of murder in the second degree (two counts), attempted murder in the second degree, and robbery in the first degree (three counts), upon a jury verdict, and imposing sentence.

Ordered that the judgment is reversed, on the law, and a new trial is ordered. The facts have been considered and determined to have been established.

The defendant was accused of having participated in the November 1, 1980, robbery of the Skylark Lounge on Merrick Boulevard in Queens, in the course of which one victim was killed and another was wounded. A codefendant was tried separately and convicted of the same crimes as this defendant. That conviction was subsequently reversed on appeal *(see, People v Smith,* 120 AD2d 118, *lv denied* 69 NY2d 750). We find that there must be a reversal in the instant case as well.

At trial, the defendant testified in his own defense. Prior to his doing so, the trial court ruled that the prosecutor would be permitted to question the defendant, on cross-examination, only as to the fact that the defendant had previously been convicted of two felonies and a misdemeanor. The court expressly ruled that no further cross-examination concerning the defendant's previous convictions, or the underlying acts, would be permitted unless the defendant denied having been convicted of two felonies and a misdemeanor, or gave misleading testimony as to those convictions. The court thus made its *Sandoval* ruling *(see, People v Sandoval,* 34 NY2d 371) in accordance with the "Sandoval compromise" described in *People v Bermudez* (98 Misc 2d 704).

Based on the court's *Sandoval* ruling, the defendant was free to take the stand and testify as to his claim of innocence without having the jury informed of the specific nature of the

two felonies of which he had been convicted, i.e., manslaughter and robbery. However, despite the court's *Sandoval* ruling, the defendant was cross-examined as to the fact that he was "convicted in 1976 of killing somebody" and as to the fact that he was "convicted of armed robbery while [he was] on parole for the 1976 manslaughter". While the defendant may have "opened the door" to cross-examination concerning the prior robbery, since he gave misleading testimony on direct examination as to the facts underlying that conviction, we find that it was an unwarranted and prejudicial departure from the court's *Sandoval* ruling to permit the defendant to be cross-examined as to the fact that he had committed a previous manslaughter.

It is error for a trial court to allow cross-examination of a defendant as to matters which the court had previously ruled would be excluded *(see, e.g., People v Edmond,* 118 AD2d 797; *People v Cook,* 103 AD2d 751, 752; *People v Davis,* 63 AD2d 948; *People v McCann,* 129 Misc 2d 1005; *see also, People v Walker,* 119 AD2d 521; *People v Bannerman,* 110 AD2d 706, 707). The purpose of a *Sandoval* ruling is to give the defendant "definitive advance knowledge of the scope of cross-examination as to prior conduct to which he will be subjected" *(People v Sandoval,* 34 NY2d 371, 375, *supra; see also, People v Ortero,* 75 AD2d 168, 175-176). In the present case, the defendant, who was on trial, *inter alia,* for having allegedly killed a man, was cross-examined as to the fact that he had killed a man on a prior occasion even though he had every reason to believe that that cross-examination had been precluded. That cross-examination was undeniably prejudicial.

The People argue that the defendant "opened the door" to cross-examination as to the previous manslaughter conviction. This argument is meritless as evinced by the following excerpt from the direct examination of the defendant.

"Q George, did you shoot Nathaniel Hatcher?

"A No, I did not. I didn't kill nobody.

"Q Were you ever in the Skylark bar?

"A No, I wasn't.

"Q Do you know where the Skylark bar is even located?

"A I don't even have no idea.

"[DEFENSE COUNSEL]: I have no further questions.

"THE COURT: You may cross examine.

"[THE PROSECUTOR]: Judge, I think we're going to need an advisory ruling before I ask my next—ruling.

"THE COURT: Step up. (Whereupon, there was a sidebar discussion off the record.)

"CROSS EXAMINATION BY [THE PROSECUTOR]:

"Q Mr. Astacio, you told us you never killed anyone.

"[DEFENSE COUNSEL]: Objection.

"THE COURT: I'm going to allow it.

"Q You were convicted in 1976 of killing somebody, weren't you?

"A Yes, I was".

The People assert that the defendant's statement that he "didn't kill nobody" amounts to a denial of any involvement in the 1976 manslaughter, so that he "opened the door" to cross-examination on that subject. This argument rests upon an unfair distortion of the defendant's testimony. The statement "I didn't kill nobody" was clearly responsive to a question concerning the robbery at the Skylark Lounge, and was clearly made with reference to that incident only. The court's subsequent decision to depart from its previous *Sandoval* ruling was therefore completely unwarranted.

Significantly, the error involved herein was not merely in the court's allowing the defendant to be cross-examined as to the prior manslaughter conviction, but, rather, in its doing so after the defendant had taken the stand secure in the knowledge that he would not be subjecting himself to that cross-examination. The error in the court's decision to depart from its prior *Sandoval* ruling cannot, under the circumstances of this case, be deemed harmless.

Accordingly, the judgment under review is reversed, and a new trial is ordered. Thompson, J. P., Lawrence, Weinstein and Harwood, JJ., concur.