THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN T. WILLIAMS, Appellant.

Second Department, December 30, 1988

APPEARANCES OF COUNSEL

*Stephen J. Pittari (Peter Paul Insero, Jr.,* of counsel), for appellant.

*Carl A. Vergari, District Attorney (Toni R. Schwartz* and *Maryanne Luciano* of counsel), for respondent.

### OPINION OF THE COURT

BALLETTA, J.

■ We are presented with an opportunity on this appeal to bridge a gap in the case law so as to reconcile the fact that a *Sandoval* ruling *(see, People v Sandoval,* 34 NY2d 371) may not be used as a ground for limiting the cross-examination by a defendant of his codefendant with the trial court's power to exercise its traditional discretion in limiting such a cross-examination in order to achieve a balance between the often competing rights of a defendant and codefendant to a fair trial when they are tried jointly. We now hold that under appropri-

ate circumstances the trial court may properly use its discretionary powers to limit the defendant's cross-examination into his codefendant's prior convictions, despite the inapplicability of *Sandoval.*

On December 7, 1984, at approximately 5:00 P.M., Domingo Banks, a 20-year-old taxi driver for the U.S.A. Cab Service in Yonkers, met his friend, Ana Pavon, who spent the evening with him riding in the front seat of his cab. At about 8:30 P.M. he proceeded to 4 Union Place pursuant to a radio dispatch and picked up two young men, the defendant and the codefendant, Steven Haskins. Although Banks did not know the pair, his companion Pavon recognized them from the neighborhood. Banks was directed by the defendant to take them to 5 Schlobum Street in Yonkers. During the trip, which took approximately four minutes, no one spoke.

When they arrived at 5 Schlobum Street, the defendant told Banks that he was going inside the building to find some friends and asked Banks to wait for him. The codefendant remained in the back seat of the taxi while the defendant went inside. Shortly thereafter, the defendant returned, accompanied by another male, and asked Banks to drive them back to 4 Union Place.

As the taxi was traveling down the hill that approached 4 Union Place, the defendant placed a gun to Bank's neck and told him to give him money. Banks saw the gun and felt it pressed to his neck. In response to the demand Banks gave the robbers approximately $20 he had in his shirt pocket and an additional sum of approximately $100 from his wallet. The three men then exited the taxi and ran off into the darkness. During the robbery, the codefendant pushed Pavon forward in the front seat to keep her head down.

After the robbery, Banks and Pavon returned to the U.S.A. Cab Service station, which was only about three minutes away from the scene of the robbery, and called the police. Two police officers arrived within five minutes, and Detective Maffei interviewed both of the victims at length. Banks informed Detective Maffei that he had been robbed by three males between 18 and 19 years old and that one of the men had an unusual looking right eye. Pavon said she recognized the man with the unusual looking right eye and identified him as Steven Haskins, the codefendant, since she had seen him on a daily basis in the neighborhood. She also recognized the defendant as another of the robbers, knowing him to be the

brother of a girl she knew in the neighborhood. She did not know the third male.

Detective Maffei then drove along with Banks and Pavon to the area in which the robbery took place, after which they proceeded to the defendant's apartment house since Pavon knew where he lived. Detective Maffei went into the building and returned with one of the defendant's brothers (later identified as Leroy Williams), but Banks and Pavon said he was not the one who had robbed them. The three thereupon continued their search and headed in the direction of the apartment building where the codefendant lived. When they reached the building at about 10:00 P.M., the building was on fire and there was a crowd of people milling around. Pavon saw one of her cousins, who told her that the defendant, Williams and the codefendant had been there just a few minutes earlier. The detective and the two victims continued their search and several minutes later they spotted the pair standing on a street corner. Detective Maffei stopped the car, got out, and arrested the defendant and the codefendant.

Williams and Haskins were tried jointly. Prior to the trial, a *Sandoval* hearing was held. The defendant brought to the court's attention his prior adjudication in 1983 as a youthful offender in an attempted robbery, and his resentence for violation of probation in 1984. The court precluded prosecutorial inquiry into the facts underlying the offense.

The *Sandoval* hearing also revealed that codefendant had been adjudicated a juvenile delinquent in 1979 and that he had been convicted of attempted robbery after a plea of guilty in 1984. The court ruled that the People would not be permitted to inquire into the underlying facts of the codefendant's prior conviction in 1984. In the event the codefendant was to take the stand, the prosecution would be limited to asking whether he had been convicted of attempted robbery in the second degree.

The defendant testified at the trial that he had been home at the time of the robbery, playing backgammon with the codefendant until approximately 8:30 P.M., when his brother Leroy and the codefendant left the apartment. The defendant remained at home until his brother, the codefendant, and a third person known as Clarence Singleton, returned. The defendant and the codefendant then went out to buy some beer, and were then arrested. He denied being involved in the robbery and claimed that he learned about it for the first time

when he was in the city jail. He testified that the codefendant had told him that he, Leroy and Singleton had committed the robbery and that the girl knew them. He did not tell him who had the gun.

The codefendant was called by his attorney to testify as a rebuttal witness. He testified that he and the defendant had had two conversations on the night in question, one at the police station and the other in jail. He recalled speaking to the defendant about how they had been at the defendant's house and that they had gone to see the fire. He denied ever telling the defendant that he had participated in the robbery. The codefendant was also asked about his prior conviction for attempted robbery in the second degree.

On cross-examination, counsel for the defendant informed the court that he intended to go into the facts of the codefendant's felony conviction and his juvenile delinquency adjudication. The Trial Judge, however, told him that "you may intend to go into that, but you're not going to go into it because I'm limiting you the same as I have limited the District Attorney".

The jury returned a verdict of guilty on each count of the indictment with respect to the defendant and the codefendant.

On this appeal, the defendant takes the position that the trial court committed reversible error by depriving him of his constitutional right of confrontation when it applied its *Sandoval* ruling to him and restricted his cross-examination of the codefendant. He contends that it was essential to his defense to impeach the codefendant's credibility in order to establish that the robbery was committed by the codefendant, the defendant's brother Leroy and Clarence Singleton, and that he was not involved in the crime.

■ Initially, we note that the defendant's claim that the trial court erred as a matter of law in applying its *Sandoval* ruling to his cross-examination of the codefendant has not been preserved for appellate review *(see, People v McGee, 68 NY2d 328)*. Although the rule in *People v Sandoval (supra)* is not to be used as a ground for limiting the cross-examination by a defendant of his codefendant, "[t]he remedy is a timely motion for severance pursuant to CPL 200.40 so that the court, mindful that *Sandoval* does not apply, may determine whether the rights of either defendant will likely be prejudiced in a joint trial" *(People v McGee, supra, at 333; see also, People v James, 116 AD2d 663; People v Amato, 99 AD2d 495)*.

At bar, no motion for severance was made by the defendant and therefore he has not preserved the issue for appellate review.

In any event, although the trial court erred when it ruled that the defendant's cross-examination of Haskins was restricted by the prior *Sandoval* ruling which precluded any inquiry into the underlying facts of the codefendant's prior conviction for robbery, under the circumstances of this case, the court's ruling did not constitute reversible error.

*People v McGee (supra)* is now the classic citation for the proposition that *Sandoval* does not apply to a codefendant. The defendant's right to confront and cross-examine his accusers takes precedence over the interest of a codefendant in a ruling under *Sandoval.* However, the trial court may exercise its discretion to restrict the scope of the cross-examination as to the prior conviction of any witness, including, a fortiori, when that witness is also a defendant.

In *People v Sorge* (301 NY 198, 202), the Court of Appeals stated: "Accordingly, although there may be room for a difference of opinion as to the scope and extent of cross-examination, the wide latitude and the broad discretion that must be vouchsafed to the trial judge, if he is to administer a trial effectively, precludes this court, in the absence of 'plain abuse and injustice' *(La Beau* v. *People, supra,* 34 N. Y. 223, 230), from substituting its judgment for his and from making that difference of opinion, in the difficult and ineffable realm of discretion, a basis for reversal."

Judge Bellacosa, in his Practice Commentary to CPL 60.40, discusses the relationship between the provisions of the Criminal Procedure Law relating to proof of prior convictions and the *Sandoval* case and notes that the cases which followed *Sandoval* continued to repose in the trial court its traditional discretion with respect to the limitation of cross-examination *(see,* Bellacosa, Practice Commentary, McKinneys Cons Laws of NY, Book 11A, CPL 60.40, at 544; *People v Mackey,* 49 NY2d 274; *see also, People v Duffy,* 36 NY2d 258, 262-263; *People v Smith,* 63 NY2d 41, 70; Richardson, Evidence § 500 [Prince 10th ed]).

The court must reconcile the defendant's right to confrontation through cross-examination of his accusers, the codefendant's right to a fair trial by the exclusion of nonprobative prejudicial evidence regarding his prior convictions, and the proper interest of justice considerations involved in joint

trials. The careful balancing of the rights of all of the parties places the trial court in a difficult position and the wisdom of the traditional discretion which applies is readily apparent. In a case such as the one at bar, in which severance was not requested and, equally, in a case in which a request for a severance is untimely made or timely made and properly denied, the trial court has to exert its best efforts to conduct the trial within the constitutionally and judicially established standards of fairness. The court's discretion to limit the cross-examination of a witness as to the underlying facts of prior convictions is to be used to ensure those standards of fairness which are required, and to which every defendant and society as a whole is entitled.

There is a lacuna in the case law on the scope of cross-examination where the witness is a codefendant and where there is prospective prejudice to the testifying codefendant in allowing unlimited cross-examination as to the underlying facts of his prior convictions. The decisions are generally confined to emphasizing that a defendant's right to cross-examine his codefendant is not limited by a *Sandoval* ruling, and that where severance is not requested appellate review is forfeited. Nothing is said of the scope of the court's discretion to limit the cross-examination where it would prejudice the fair trial of the codefendant. However, a line has been carefully drawn between cross-examination for purposes of impeachment of credibility and cross-examination to show predisposition to commit the offense.

In *People v Rahman* (62 AD2d 968, 970), it was stated that: "The law is clear that a defendant, who chooses to testify, may be cross-examined concerning any immoral, vicious or criminal acts of his life which have a bearing on his credibility as a witness, provided the cross-examiner questions in good faith and upon a reasonable basis in fact. Nonetheless, a defendant should not be questioned as to such acts when the obvious intent is to show from character or experience a propensity to commit the crime for which defendant is on trial *(People v Duffy,* 36 NY2d, 258, cert den 423 US 861)."

Where the witness is not a defendant there is no rational basis on which to restrict cross-examination with respect to prior misconduct *(see, People v Robideau,* 121 AD2d 769; *People v Allen,* 67 AD2d 558, 560, *affd* 50 NY2d 898). This principle is not applicable when the witness is also a codefendant since the possibility of prejudice to the codefendant

provides a rational basis upon which the court may exercise its discretion to limit his cross-examination by the defendant.

In this case, it was not an abuse of this discretion to limit the examination of the codefendant by defense counsel to the fact of the conviction and to exclude the underlying acts. An exploration of the underlying acts of the prior robbery would create a danger that the jury would apply the evidence in the prior case against the codefendant. The crime was similar to the one for which the defendant and codefendant were being tried and thus bore its own prejudice (see, People v Dickman, 42 NY2d 294). More importantly, the very theory of the defendant's case rested on the fact that it was the codefendant and two others who committed the robbery. This is what he set out to prove in his defense and therefore to a great degree he was acting as a prosecutor vis-à-vis the codefendant in order to vindicate his defense.

Accordingly, in the absence of a timely motion for severance, the Trial Judge did not abuse his discretion in limiting the cross-examination of the codefendant. The difficulty which the defendant had in toeing the line between impeaching credibility and proving the predisposition of the codefendant to commit the crime in question is demonstrated by the questions which he in fact asked the codefendant in his cross-examination. They tended towards the latter goal and thus were improper, especially in a joint trial.

Furthermore, an examination of the record establishes, as the People contend, that the defendant had in fact gone as far on the matter of impeachment of credibility by prior bad acts as he could have within the context of the theory of his case, in light of the codefendant's adamance that he did not make a statement exculpating the defendant. It became an issue of credibility and the issue was properly left to the jury (see, People v Parsons, 112 AD2d 250). Moreover, in view of the overwhelming evidence of guilt, the ruling of the trial court did not contribute to the defendant's conviction (see, People v Kevin Jones, 125 AD2d 414).

It should also be pointed out that in spite of the court's ruling, defense counsel ingenuously extracted the potentially damaging and prejudicial information he desired. He was able to extract the fact that the victim in the prior conviction was Hispanic and that the codefendant's partner in that crime was the defendant's brother Leroy. In the light of these considerations it cannot be said that there was a "reasonable possibil-

ity" that any alleged improper exclusion of evidence occasioned by the court's limitation of the defendant's cross-examination affected the outcome of the trial *(see, People v Crimmins,* 36 NY2d 230, 237).

The defendant further contends that the trial court committed reversible error when it precluded his investigator from testifying as to conversations he had with Clarence Singleton in which Singleton allegedly made statements against his penal interest. It is claimed that Singleton stated that he was 1 of the 3 who were in the cab at the time of the robbery but that he did not know that his two companions were planning to commit the robbery. Singleton was also alleged to have stated in that conversation that the third person was the defendant's brother, Leroy Williams, and not the defendant.

The rule permitting declarations against penal interest to be admitted as an exception to the hearsay rule was introduced in 1970 by the Court of Appeals decision in *People v Brown* (26 NY2d 88), and was extensively reviewed and substantially refined in the two 1978 decisions of *People v Settles* (46 NY2d 154) and *People v Maerling* (46 NY2d 289). In *People v Nicholson* (108 AD2d 929, 930), this court summarized the exception as follows: "Declarations against penal interest constitute an exception to the rule against admission of hearsay evidence because such statements bear a particular degree of reliability based upon the assumption that a person would not falsely utter a remark that could subject him to penal sanctions *(People v Maerling,* 46 NY2d 289). Thus, '[t]o qualify for admission into evidence as a declaration against the maker's penal interest the following elements must be present: first, the declarant must be unavailable as a witness at trial; second, when the statement was made the declarant must be aware that it was adverse to his penal interest; third, the declarant must have competent knowledge of the facts underlying the statement; and, fourth, and most important, supporting circumstances independent of the statement itself must be present to attest to its trustworthiness and reliability (see *People v Harding,* 37 NY2d 130, 135 [concurring opn]; Richardson, Evidence [10th ed—Prince], § 257; Fisch, New York Evidence [2d ed], § 892)' *(People v Settles,* 46 NY2d 154, 167)."

There is no question that Singleton, by invoking his right to remain silent, had become unavailable for the purposes of the rule *(People v Settles, supra).* Quite clearly, if Singleton declared that he was in the taxicab during the robbery, but that he did not know of the plans beforehand, he must have been

aware that this would place him in a position adverse to his penal interest. Two of the perpetrators had already been arrested for the robbery but because of a lack of identification the third had not been apprehended. His statement that he was in fact the third person at a time when the other two were incarcerated must have been made knowing the consequences of this admission *(see, People v Thomas,* 68 NY2d 194, 199-200).

Contrary to the People's contention that the alleged statement favored Singleton's own interest rather than being against it, the mere fact that the statement placed Singleton in a lesser role in the robbery does not disqualify the statement from being a declaration against penal interest. The hearsay exception for declarations against penal interest is predicated on their disserving character and thus a threshold criterion for their admission is their disservice to the declarant in terms of his penal interest *(People v Brensic,* 70 NY2d 9, 25). In the instant case we have a gratuitous statement made to the defendant's investigator in presumable knowledge that the police were not able to identify the third robber. The admission that he was 1 of the 3 persons in the taxicab, even with the minimizing of his role, still compromised his penal interest since the evidence was that the three participated in the robbery.

However, what proves to be fatal to the defendant in this case is his failure to adequately meet the fourth prong of the test for admissibility, namely, a showing of the trustworthiness and reliability of the statement. Such reliability must be proved by "some evidence, independent of the declaration itself, which fairly tends to support the facts asserted therein" *(People v Settles,* 46 NY2d 154, 168, *supra).* As the court explained in *Settles (supra,* at 169-170): "Naturally, there can be no precise demarcation or formulation of the proof which would constitute sufficient supportive evidence of a declaration against penal interest. *By its very nature, the determination involves a delicate balance of diverse factors and is entrusted to the sound judgment of the trial court, which is aptly suited to weigh the circumstances surrounding the declaration and the evidence used to bolster its reliability. The crucial inquiry focuses on the intrinsic trustworthiness of the statement as confirmed by competent evidence independent of the declaration itself.* Circumstances of seeming indifference may still harmonize the declarant's statement so as to furnish the necessary link. By way of illustration, eyewitness testimony

placing George at or near the scene of the crime, or proof of his possession of the fruits or instrumentalities used to commit the crime would suffice. Supportive evidence is sufficient if it establishes a reasonable possibility that the statement might be true. *Whether a court believes the statement to be true is irrelevant, and the question of admissibility is to be resolved without regard to the seeming strength or weakness of the People's case.* If the proponent of the statement is able to establish this possibility of trustworthiness, it is the function of the jury alone to determine whether the declaration is sufficient to create reasonable doubt of guilt" (emphasis supplied).

We do not find that the trial court abused its discretion in holding that the statement was not independently reliable and in refusing to allow the defendant's investigator to testify concerning his conversation with Singleton. Moreover, the defendant suffered no significant prejudice from the exclusion of that evidence since the portion of the statement which exculpated him was, in any event, inadmissible. Only that part of the statement which inculpated the unavailable witness Singleton was potentially admissible as a declaration against penal interest *(see, People v Maerling, supra; People v Thompson,* 129 AD2d 655).

BRACKEN, J. P. (concurring). The defendant argues that the ruling by the trial court which limited his ability to cross-examine a testifying codefendant, amounted to a violation of his constitutional right to confront the witnesses against him *(see,* US Const 6th, 14th Amends; NY Const, art I, § 6; *Olden v Kentucky,* — US —, 57 USLW 3410; *Coy v Iowa,* 487 US —, 108 S Ct 2798; *Delaware v Van Arsdall,* 475 US 673; *Douglas v Alabama,* 380 US 415; *Pointer v Texas,* 380 US 400; *People v McGee,* 68 NY2d 328; *People v Gissendanner,* 48 NY2d 543, 547-548). My colleagues in the majority hold that the defendant's failure to request a severance operated as a forfeiture of his right to appellate review of this argument. With this aspect of the opinion of the majority I might well agree *(see, People v McGee, supra; see also, People v Russell,* 71 NY2d 1016; *People v Walker,* 71 NY2d 1018).

However, in rejecting the defendant's argument on the merits, the majority goes further and holds, as I understand it, that if a motion for a severance had been made, it could properly have been denied by the trial court. This is so because, as is stated in the opinion of the majority, a trial

court "may properly use its discretionary powers to limit the defendant's cross-examination into his codefendant's prior convictions". I cannot concur in this aspect of the court's decision *(see, People v McGee, supra; see also, People v Rodriguez,* 91 AD2d 591).

In voting to affirm the defendant's conviction, I rely principally on two factors which, it seems to me, render any error by the trial court in this respect harmless beyond a reasonable doubt *(see, Cruz v New York,* 481 US 186; *Delaware v Van Arsdall, supra; People v Hamlin,* 71 NY2d 750; *People v Allen,* 67 AD2d 558, *affd* 50 NY2d 898; *People v York,* 126 AD2d 767, 770 [violations of Confrontation Clause may be harmless]). First, the codefendant's testimony, while tending to exculpate him, and while tending to contradict certain aspects of the defendant's testimony, did not significantly incriminate the defendant *(see, United States v Crockett,* 813 F2d 1310). Second, it appears that the defendant's attorney did, in fact, extensively cross-examine the codefendant concerning the details of his prior immoral and criminal acts, in apparent disregard of the trial court's ruling. For these reasons, and in light of the overwhelming proof of the defendant's guilt, I would not reach this issue of denial of the right of confrontation in the interest of justice.

I therefore concur in the affirmance of the defendant's judgment of conviction.

LAWRENCE and WEINSTEIN, JJ., concur with BALLETTA, J; BRACKEN, J. P., concurs in a separate opinion.

Ordered that the judgment of the Supreme Court, Westchester County, rendered September 30, 1985, is affirmed.