OPINION OF THE COURT
Donald J. Mark, J.
The charges against the defendant arose out of a bizarre series of events in which the defendant over an eight-year period induced the victim to submit to sexual acts by constantly deceiving her that if she declined "the Mob” would harm the victim and her family and/or the defendant and his *739 family.[2] As a result of this scenario the defendant was ultimately convicted after a jury trial of three counts of first degree rape, three counts of first degree sodomy and one count of second degree coercion.[3]
At the pretrial Sandoval hearing (People v Sandoval, 34 NY2d 371), the prosecutor sought permission to cross-examine the defendant concerning allegations that he had practiced the same deception upon two sisters of the victim, causing the older sister to engage in oral sex on three occasions and the younger sister to engage in vaginal and oral sex on five occasions. These eight incidents were never prosecuted, so the defendant could only be impeached on the basis of prior acts of misconduct — the uncharged crimes (People v De Pasquale, 54 NY2d 693; People v Maiolo, 122 AD2d 586, lv denied 68 NY2d 814; People v Simpson, 109 AD2d 461, appeal dismissed 67 NY2d 1026).
The defendant resisted the People’s application, emphasizing the obvious prejudice in a cross-examination that exposes past misconduct of a defendant that is identical to the crimes charged. Some courts have held that a defendant should not be immunized because all his criminal activities were similar in nature (e.g., People v Rahman, 46 NY2d 882; People v Rouse, 142 AD2d 788 [defendant charged with raping his brother’s wife could be cross-examined regarding his adulterous behavior with this brother’s previous wife]); other courts have reached an opposite conclusion (e.g., People v Holman, 172 AD2d 245; People v Syposs, 122 AD2d 600 [defendant charged with committing sodomy and sexual abuse with his 14-year-old daughter cannot be cross-examined about his prior sexual abuse of his older daughter]).
This dilemma of effecting fairness to the People while avoiding undue prejudice to the defendant in a situation where that individual’s past and present crimes are similar was resolved via the mechanism of the Sandoval compromise formulated in People v Bermudez (98 Misc 2d 704). That procedure allows the prosecutor to ask a defendant if he were convicted of a felony or felonies without any reference to the *740 nomenclature or the details. The viability of that approach has been proved in many trial courts since its inception, as has been demonstrated by the continuous approbation it has received at the appellate level (e.g., People v Bruzon, 173 AD2d 279; People v Szczcepanski, 172 AD2d 884; People v Scipio, 169 AD2d 596).
However, as has been indicated, the defendant was not prosecuted for the sexual conduct involving the victim’s sisters, so the Sandoval compromise per se was inapplicable. Thus, a modification of that theory was devised (see, People v Williams, 142 AD2d 310)[4] to effectuate its stated objective in this unusual situation.
The ruling was issued that in the event the defendant testified, he could be cross-examined as to whether on a certain date he made an untruthful, coercive statement to a certain individual (unnamed) which resulted in conduct on his part which would constitute a felony if prosecuted,[5] and as to whether on certain dates he made untruthful, coercive statements to a certain individual (unnamed) which resulted in conduct on his part which would constitute three felonies if prosecuted.[6] By the omission from the questions of the gender of the victim and the exact nature of the defendant’s misconduct, and by decreasing the number of "felonies” by one half, prejudice to the defendant was thereby minimized (see, People v Cruz, 173 AD2d 320).
An affirmative response by the defendant to this line of cross-examination would, of course, terminate the inquiry (People v Bermudez, supra). Should the defendant exercise his option to deny these four instances of misconduct, the prosecutor would be precluded from introducing extrinsic evidence to refute such denials (People v Duncan, 13 NY2d 37), but the prosecutor could continue to cross-examine the defendant in this area in an effort to persuade the defendant to change his mind and admit to his misconduct (People v Astacio, 131 AD2d 684; see, People v Beaumont, 170 AD2d 513; People v Bermudez, supra).
Therefore, a further ruling was made that in the event the defendant answered the two questions in the negative, he *741 could be asked additional questions escalating in their incriminating effect until he either responded in the affirmative or until the ultimate specific questions were asked. Thus, upon his initial denial the defendant could be questioned as to whether on a certain date he untruthfully stated to a named female that he was involved with "the Mob”. Persistent denials to the increasingly inculpatory questions could culminate with the question as to whether on a certain date the defendant stated untruthfully to a named female that unless she engaged in oral sex with him, "the Mob” would harm her and her family and/or the defendant and his family, and that as a result she did in fact submit to such sexual activity with him.[7]
This attempt to employ the spirit of the Sandoval compromise in a Sandoval "lacuna” was negatived by the defendant’s failure to testify at the trial, but his conviction and probable appeal provide the setting for eventual appellate review of this procedure.

. The People asserted that this scheme constituted a threat sufficient to satisfy the requirements of Penal Law § 130.00 (8) relative to the rape and sodomy counts and Penal Law § 135.60 relative to a coercion count.

. Since the victim was unable to designate the dates of multiple incidents with the requisite specificity (People v Beauchamp, 74 NY2d 639), the defendant was charged with this continuing crime (People v Hertz, 77 AD2d 885).

. That case discussed a "lacuna” in the case law regarding the application of People v Sandoval (supra); this is another example of a "lacuna.”

. This referred to the sexual activity involving the victim’s older sister.

. This referred to the sexual activities involving the victim’s younger sister.

. The court did not intend to dictate the exact content of the additional questions to the prosecutor, depending upon the parties through appropriate questions and proper objections to ensure that these parameters were observed.