OPINION OF THE COURT
Robert Charles Kohm, J.
Defendant in an omnibus motion seeks dismissal of the *40 Grand Jury indictment on two grounds. The first alleges a lack of evidence.
The court has inspected the minutes of the Grand Jury and finds that sufficient legal evidence was adduced to sustain both counts of the indictment and therefore, that branch of the motion to dismiss the indictment for lack of evidence is denied.
The second branch of the motion alleges that the District Attorney failed to notify defense counsel, after inquiry, of his intention to use specific convictions to impeach the credibility of the defendant before the Grand Jury.
Basically, defendant is seeking to apply the Sandoval principles at the Grand Jury level.
The defendant in this action was indicted on July 27, 1993 and charged, along with a codefendant, with criminal sale of a controlled substance in the third degree. Defendant was also individually charged with assault in the second degree. Prior to the Grand Jury’s deliberations, the defendant exercised his statutory right to appear as a witness in his own behalf (CPL 190.50 [5]). Prior to his appearance before the Grand Jury, defendant’s attorney requested that the prosecutor inform her as to what convictions the People intended to utilize in their cross-examination. The prosecutor refused to divulge this information.
Defendant then testified before the Grand Jury after executing a waiver of immunity. The essence of his testimony was that he was in the area of the drug transaction on the day in question. He borrowed $2 from the codefendant to buy cigarettes in a local store. While in the store, he was grabbed by someone and arrested on a drug charge. He maintains that he was not involved in any such act. In addition, defendant volunteered information that he had previously been in jail and was currently involved in a parole violation. He also stated that he was convicted of other crimes.
On cross-examination, the District Attorney concentrated on defendant’s criminal record. The defendant was forced to admit that he was convicted of reckless endangerment in August 1992. The District Attorney also brought out that in August 1989 defendant pleaded guilty to criminal possession of a controlled substance, as well as attempted unauthorized use of a motor vehicle.
A question was asked by a grand juror to the effect that when the defendant was arrested for "criminal sale” of a *41 controlled substance, did he possess drugs at that time? Defendant stated that he was "in possession” and also "on drugs”.
The defendant in this action asserts that the prosecutor, as an advocate and a public officer, is not only obligated to protect the public interest but must protect the rights of the accused as well, and must also appear to be disinterested and impartial (People v Lofton, 81 Misc 2d 572, 575). Defendant further alleges that the prosecutor’s quasi-judicial duties are to seek indictments and to see that justice is done (People v Pelchat, 62 NY2d 97).
Based on the District Attorney’s quasi-judicial duties, defense counsel requested that a Sandoval compromise be made before the defendant testified at the Grand Jury in order to limit the use of prior convictions. The Court in People v Sandoval (34 NY2d 371, 375) held that a balance must be struck "between the probative worth of evidence of prior specific criminal, vicious or immoral acts on the issue of defendant’s credibility on the one hand, and on the other the risk of unfair prejudice to the defendant, measured both by the impact of such evidence if it is admitted after his testimony and by the effect its probable introduction may have in discouraging him from taking the stand on his own behalf’ (see also, People v Williams, 56 NY2d 236; People v Pollock, 50 NY2d 547). The prosecutor refused to agree prior to the Grand Jury presentation to limit his cross-examination of defendant.
Defendant further alleges that the cross-examination by the prosecutor and the question posed on behalf of a grand juror as to "sale” rather than "possession” was highly prejudicial as criminal sale was the charge being presented to this Grand Jury. Despite the prosecutor’s final charge that the evidence was adduced solely for impeachment purposes, there was no correction of the erroneous and very prejudicial reference to "sale”.
Defendant also claims that the District Attorney’s failure to grant him the initial Sandoval relief of knowing which crimes would be used against him forced him to testify against himself. Further, the lack of such information ultimately resulted in unfair and inappropriate cross-examination which nullified his right to testify effectively on his own behalf.
The People contend that defendant was given the opportunity to complete his entire statement before cross-examination and that the prosecutor’s questioning was proper and impartial pursuant to CPL 190.50 (5) (b). The People further assert *42 that the prosecutor’s even-balanced approach to eliciting and clarifying facts for the Grand Jury’s consideration was not prejudicial.
In deciding whether to apply the Sandoval principles at the Grand Jury level, the court has considered the following issues:
1. Can the District Attorney be required to advise defense counsel, in advance, of his intention to use convictions to impeach the credibility of the defendant when he chooses to testify before the Grand Jury?
2. Does the court have the right to make evidentiary rulings which affect the presentation of evidence to the Grand Jury in order to preserve a defendant’s constitutional, common-law and statutory rights before the Grand Jury which, inter alia, would result in judicial economy?
3. Would a Sandoval ruling, applicable only to a Grand Jury presentment, result in a greater number of defendants exercising their constitutional, common-law and statutory rights to testify before the Grand Jury?
This court answers the foregoing questions in the affirmative, based on the following opinion, decision and order of the court.
The District Attorney determines what matters are presented to the Grand Jury and has the duty of instructing that body on the law with respect to matters before it (People v Valles, 62 NY2d 36, 38). However, the prosecution’s discretion at the Grand Jury level is not unlimited. It is now settled that the "prosecutor performs the dual role of advocate and public officer, charged with the duty not only to secure indictments but also to see that justice is done * * * The prosecutor’s duty of fair dealing extends not only to the submission of evidence, but also to instructions on the law, for, by statute, responsibility for instructing the Grand Jury on the law rests solely with the court and the prosecutor, and the Grand Jury may not seek legal advice from any other source.” (People v Lancaster, 69 NY2d 20, 26.)
"The primary function of the Grand Jury in our [judicial] system is to investigate crimes and determine whether sufficient evidence exists to accuse a citizen of a crime and subject him or her to criminal prosecution.” (People v Calbud, Inc., 49 NY2d 389, 394.) The Grand Jury’s role is defined by statute (CPL art 190). "It remains the exclusive judge of the facts with respect to any matter before it (CPL 190.25, subd 5) and *43 it may indict for an offense only if the evidence spells out a legally sufficient case and reasonable grounds to believe [that] defendant committed the offense charged.” (People v Pelchat, supra, at 105.)
The Grand Jury then is essentially an investigatory body (cf., People v Brewster, 63 NY2d 419, 422; People v Ianniello, 21 NY2d 418, 424) whose statutory function is "to hear and examine evidence concerning offenses and * * * misconduct and to [act] with respect to such evidence” (CPL 190.05). The District Attorney’s primary role before the Grand Jury is to present relevant evidence in accord with statutory rules and case law (People v Pelchat, supra, at 107; People v Grafton, 115 AD2d 952; People v Isla, 96 AD2d 789; People v Davis, 119 Misc 2d 1013; People v Filis, 87 Misc 2d 1067).
Therefore, since advising a defendant as to impeachment convictions prior to a Grand Jury appearance is a valid exercise of a District Attorney’s duty under Sandoval, such an act insures the integrity of that body. It would normally lead to an evaluation of defendant’s past crimes for possible prejudice and assist the Grand Jury in its fact-finding capacity by avoiding undue emphasis on one’s criminal background. It also would help to prevent erroneous information from influencing the individual grand juror such as took place in the present action.
As a matter of course, the People have denied the prospective relief sought by the defendants, expecting defendants to move the court for dismissal after an indictment has been voted. This negative view distorts the role of the Grand Jury and deprives defendants of the opportunity to make statements without fear of undue prejudice.
In People v DiFabio (79 NY2d 836), the Court of Appeals held that it was within the trial court’s power to determine whether a child witness could testify before the Grand Jury. In defining the scope of the prosecutor’s responsibilities, the Court of Appeals ruled that the trial court’s power to participate in Grand Jury proceedings is not curtailed by statute.
Should it not follow that a trial court has the right to make an evidentiary ruling which encompasses the constitutional, statutory and common-law rights of a defendant and the power and authority to rule on limiting the use of prior convictions prior to a defendant’s appearance at the Grand Jury? (Branzburg v Hayes, 408 US 665; People v DiFabio, supra; CPL 190.25 [6]; 190.30 [6], [7].)
*44 In 1974, the Court of Appeals in People v Sandoval (supra) permitted a trial court to make an advance ruling as to the use by the People of prior convictions for the purpose of impeaching a defendant’s credibility. The ruling was based on a court’s discretionary power to preclude the introduction of evidence which would be more prejudicial than probative (cf., People v Schwartzman, 24 NY2d 241). The Sandoval ruling initially concerned itself with the trial court and envisioned pretrial rulings.
Two weeks after the Sandoval decision came down, the defendant, in People v Hargrove (80 Misc 2d 317 [Sup Ct, Westchester County, Quinn, J.]), moved to dismiss the indictment in the interest of justice. At the Grand Jury presentation, there were gross inconsistencies in the testimony of the two police officers as to the possession and passing of a glassine envelope between defendant and an unapprehended other. Defendant elected to testify before the Grand Jury and a witness, who also waived immunity, testified on behalf of Hargrove.
When defendant took the stand, the court held that "he was confronted with his criminal record which was inadmissible by reason of the holding in Sandoval” (People v Hargrove, supra, at 327). The court found that the prosecutor violated the reason and spirit of Sandoval by knowingly and deliberately prejudicing the defendant with the use of stale drug convictions and more remote but less prejudicial convictions in other jurisdictions. The court further found that the highly suggestive impeachment testimony was used substantively to convince the Grand Jury of defendant’s guilt and that the Grand Jury minutes were devoid of any limiting instruction by the prosecutor that the prior convictions were admitted solely to demonstrate defendant’s testimonial untrustworthiness. The court concluded that there is no legal justification or rational basis to safeguard a defendant’s rights before a petit jury and not before a Grand Jury.
The indictment was dismissed based on the prejudice resulting from the Sandoval violations.
A year later a defendant moved for an order "restraining the District Attorney * * * from interrogating or cross-examining the defendant concerning his prior criminal record, if he exercises his right to appear and testify before the Grand Jury.” This application was made in the Supreme Court, New York County, before Judge George F. Roberts. The court in *45 that case (People v Adams, 81 Misc 2d 528, 529) agreed that if a "defendant’s prior criminal record would be inadmissible because of its prejudicial effect on a trial jury, it is not rendered less prejudicial because it is presented to a Grand Jury” (supra, at 529-530). Nevertheless, the court denied relief on two grounds. The first was the Grand Jury was limited in its role as opposed to the petit jury. The Adams court further pointed out that since the District Attorney was the legal adviser of the Grand Jury, he was in a position to advise that body as to the significance of all evidence including prior convictions.
The second reason for denial was the practical matter of judicial delay. "If a court must rule on the competency, admissibility, and legal effect of evidence prior to its submission to a Grand Jury, the traditional function of that body would be delayed and impaired to the point where it would cease to perform a useful [function]” (supra, at 531). The Adams court failed to take into consideration the holdings in Hargrove (supra).
In connection with the Adams case (supra), the court pointed out that the defendant always had a remedy in the event the District Attorney presented evidence in a prejudicial fashion and that would be to make a motion to inspect the Grand Jury minutes and dismiss the indictment for impairing the integrity of the Grand Jury.
The Adams case (supra), decided in 1975, rested upon the dual premise that the District Attorney would apply Sandoval in the proper cases at the Grand Jury level, and, in any event, the defendant had an effective remedy to correct any abuse. This court finds this reasoning failed to fully grasp the implications of Sandoval.
Subsequent cases have applied the Sandoval principle to Grand Jury proceedings only to the extent of dismissing the indictment if the defendant’s prior criminal record prejudiced the Grand Jury to such an extent that its integrity was impaired. Courts have generally followed the holding in Adams (supra) wherein a defendant’s sole remedy is to raise the issue of prejudice in a pretrial motion pursuant to CPL 210.20.
The decision in Adams (supra) rested squarely on United States v Dionisio (410 US 1, 9). In Dionisio, a Special Grand Jury had subpoenaed individuals to investigate violations of Federal gambling statutes. Dionisio, invoking his Fourth and Fifth Amendment rights, refused to give a voice exemplar *46 which the Grand Jury wished to compare to wiretaps obtained pursuant to a valid court order. The Supreme Court held that Dionisio’s Fourth Amendment rights were not violated by subpoenaing him to appear before the Grand Jury and seeking a voice exemplar, and reversed and remanded for further proceedings.
The Supreme Court held that to saddle a Grand Jury with preliminary showings and minitrials would not only impede its investigation but would frustrate the public interest in fairly and expeditiously administrating criminal laws (supra, at 17). The Court further stated that the Grand Jury should be free to pursue investigations without external influence or supervision so long as the legitimate rights of any witness are not trenched upon. However, this court finds Dionisio (supra) inapplicable where, as here, a defendant has been arrested and wishes to testify before the Grand Jury to prevent indictment. Dionisio concerned itself with the Grand Jury’s investigative powers being impeded by hearings dealing with the admissibility of evidence necessary for the attainment of an indictment. It did not deal with the issue of whether a defendant is entitled to a ruling on whether prior specific criminal, vicious or immoral acts should be revealed to a Grand Jury in the event the defendant elects to testify before the Grand Jury. The Dionisio Court does, however, emphasize that the legitimate rights of any witness are not to be trenched upon (see, Branzburg v Hayes, 408 US 665, 682, cited in United States v Dionisio, supra, at 9).
If we extend the reasoning in Branzburg (supra) to the instant case, where case law and statutes now expand a defendant’s rights under Sandoval, and where a defendant has the right to counsel at the Grand Jury (CPL 190.52), it is clear that a Sandoval ruling prior to a Grand Jury appearance by a defendant would not only ensure that competent evidence would be presented, but it would eliminate those motions to dismiss based on prejudice to the defendant because the integrity of the Grand Jury was impaired.
The right to testify before a Grand Jury originated at a time of fierce conflict between the power of the throne and the rights of the subject. To secure the right of a subject to appeal to one’s peers before the government could bring one to trial, the right to speak under the immunity of secrecy and irresponsibility was wrung from the government to prevent oppression. The Federal and State Constitutions adopted the principles of a defendant’s right to testify before the Grand *47 Jury to protect citizens and as a necessary aid to justice. Our State’s statutes fully and explicitly define the rights of the people and the functions of the Grand Jury (People v Naughton, 7 Abb Prac [NS] 421, 426-427, 38 How Prac 430, 437-438).
An analysis of CPL 190.50 (5) establishes that a defendant has a right to appear and testify on his own behalf. Courts have interpreted this section as to require that the defendant be given an opportunity to testify meaningfully (People v Miller, 144 AD2d 94, 97) or at least in a reasonably fair manner (People v Lerman, 116 AD2d 665, 666).
Should not a defendant who voluntarily goes before a Grand Jury be afforded the same basic rights that he would possess if he chose to testify in his own behalf at trial?
The Adams court and subsequent courts that followed Adams (supra) failed to take into consideration the chilling effect that the ruling, requiring defendant to raise the issue of improper use of convictions in postindictment motions, would have upon the defendant’s determination of whether to testify before the Grand Jury. With the passage of time it has become apparent that prosecutors have routinely ignored evaluating prejudice regarding prior convictions when presenting their case to the Grand Jury. Rather, it would appear that prosecutors simply read all convictions into the Grand Jury record. A defendant with prior convictions, especially for the same crime charged, or similar crimes, would most likely decide not to appear before a Grand Jury because of the devastating effect the revelation of his criminal history would have upon the members of the Grand Jury. To deny a defendant this basic right not only acts to chill the defendant’s right to testify in the hope that his testimony will result in the Grand Jury voting no true bill, but also overburdens the court with baseless indictments. In the case where a defendant chooses not to testify because of his fear of being impeached, the postindictment relief fashioned by the court is meaningless. This issue is at the very core of the Sandoval decision. The court cannot grant relief when the defendant is forced to forego his right to testify because of fear that nothing he would say would be believed because of the People’s unchecked use of his prior convictions.
In the case at bar, this court finds that the emphasis on defendant’s drug past and the erroneous reference to a sale conviction, clearly resulted in prejudice to his credibility and deprived him of a meaningful opportunity to tell his story in *48 an impartial fashion (see, People v Howard, 152 Misc 2d 956). This prejudice, in turn, nullified his rights pursuant to GPL 190.50 (5) and shifted the Grand Jury’s attention away from the facts of the case as they existed on July 13, 1993.
Based on the above, this court concludes that in order to preserve the integrity of the Grand Jury and permit a defendant to testify meaningfully, the application of Sandoval principles is required at the Grand Jury level. To hold otherwise would defeat the spirit and intent of Sandoval.
Had the District Attorney notified counsel as to which convictions he would use before the Grand Jury to impeach the defendant’s credibility, the matter would have been ruled on immediately without the resultant prejudice to the defendant, thus forestalling this motion to dismiss.
Further, counsel might well have found that the proposed list would be so lengthy or similar to the present charges as to make them inherently prejudicial. In such a case, defendant’s attorney should be permitted to suggest to the prosecutor that a Grand Jury credibility "Sandoval compromise” be permitted. Our courts now realize that the "dilemma of effecting fairness to the People while avoiding undue prejudice to the defendant” can be resolved via the mechanism of the "Sandoval compromise” (People v Doe, 153 Misc 2d 738, 739). This form of relief, first formulated in People v Bermudez (98 Misc 2d 704), permits a balancing of factors appropriate to the individual case in order to insure fairness with regard to cross-examination of prior crimes. Since such a compromise has been approved in drug cases at an appellate level (see, People v Dillon, 157 AD2d 742), there is no logical reason why it cannot be utilized at the Grand Jury stage. It must be kept in mind that the District Attorney controls his own evidence. Hence this compromise would be binding only for Grand Jury purposes and would need no court approval.
In the event no credibility compromise can be agreed upon, then the court’s assistance must be sought prior to the Grand Jury presentation.
As regards advance rulings, this court is aware of the delay inherent in "[ajdding yet another layer of motions” on an overburdened court system (People v Adams, supra, at 531). However, defendant’s right to an unprejudiced and meaningful appearance before a Grand Jury far outweighs any additional burden that might result to the court’s calendar. Such relief at the Grand Jury level is fundamental and lies within *49 the authority of the court (Branzburg v Hayes, supra, at 682; People v DiFabio, supra; CPL 190.25 [6]). It is the District Attorney whose role is limited by statute (CPL 190.30). This ruling will not overburden the court in view of the fact that a Sandoval motion could be made orally at the time of the presentment and an emergency Judge, or any available Judge, could hear the application and make the ruling. This Sandoval ruling would likewise not be binding on the trial court, since it is based on the felony complaint and not on the resulting indictment.
However, since the Sandoval principles are so firmly established at the pretrial level, no great burden should be placed on attorneys seeking to utilize it at the Grand Jury presentation. Along with the preservation of defendant’s rights, including the right to a speedy trial pursuant to CPL 30.30, judicial economy would result from the use of Sandoval at a Grand Jury proceeding. The resultant delays between dismissal and re-presentment, including but not limited to, the submission of new motions after reindictment, a reasonable time for the court to inspect the minutes of the re-presentment and render a decision on that motion, are more burdensome and impractical than requiring a Sandoval ruling prior to a Grand Jury presentment.
Therefore, the defendant’s application to dismiss all counts of the indictment based upon unfair and inappropriate cross-examination in violation of Sandoval principles is granted. All other omnibus relief is denied as moot. The District Attorney is granted leave to re-present the matter before another Grand Jury following the directives set forth in this order. Should the District Attorney and defense counsel fail to reach a Sandoval compromise, the application shall then be made before a Justice of the Supreme Court. Of course, the principles set forth in this decision are applicable to all Grand Jury presentations.